# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

UNITED STATES OF AMERICA   :
                                    :   CRIMINAL ACTION NO.
      v.                       :   1:01-CR-0074-2-JOF
                                      :
ANDREW MOORE,           :   CIVIL ACTION NO.
                                      :   1:06-CV-2145-JOF
          Defendant.       :

## OPINION AND ORDER

This case is before the court on Petitioner Andrew Moore, Jr.'s motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence [754] and motion for leave to proceed *in forma pauperis* [755].

## I.    Background

### A.    Facts and Procedural History

Petitioner, Andrew Moore, was a pimp operating in southwest Atlanta in and around Metropolitan Avenue ("the track") from at least 1997 to his arrest in late 2001. In January of 2002, a jury convicted Moore of (1) conspiring to participate in a juvenile prostitution enterprise affecting interstate commerce through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(d); (2) enticing juveniles to engage in prostitution, in violation of 18 U.S.C. § 2422(b); (3) using interstate facilities to carry on prostitution, in violation of 18 U.S.C. § 1952(a)(3); (4) four counts of extortion in violation of the Hobbs Act, 18 U.S.C.

§ 1951; (5) six counts of involuntary servitude, in violation of 18 U.S.C. § 1584; and (6) distribution of marijuana and cocaine to minors, in violation of 21 U.S.C. § 859. This court sentenced him to a total of forty years' imprisonment.

Moore, along with co-defendant Charles Pipkins, appealed to the Eleventh Circuit and raised the following issues: (1) whether the evidence was sufficient to support the Defendants' RICO conspiracy convictions; (2) whether Pipkins' conduct constituted extortion within the meaning of the Hobbs Act; (3) whether the district court properly instructed the jury on the interstate commerce element of the Hobbs Act; (4) whether the evidence was sufficient to support Pipkins' involuntary servitude conviction; (5) whether the evidence was sufficient to support Pipkins' conviction for transfer of false identification documents; and (6) whether the district court properly calculated Pipkins' and Moore's sentences under the Sentencing Guidelines. *United States v. Pipkins*, 378 F.3d 1281, 1287 (11th Cir. 2004).

The Eleventh Circuit affirmed the Defendants' sentences and convictions. Defendants appealed the decision of the Eleventh Circuit. The Supreme Court granted certiorari, vacated the judgment, and remanded the case for further consideration in light of *United States v. Booker*, 534 U.S. 220 (2005) (holding that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant

AO 72A
(Rev.8/82)

or proved to a jury beyond a reasonable doubt."). *Pipkins v. United States*, 544 U.S. 902 (2005). On remand, Defendants asserted to the Eleventh Circuit that this court made various factual findings which it used to enhance their sentences, but these were not found by a jury beyond a reasonable doubt. Pursuant to its holding in *United States v. Levy*, 379 F.3d 1241 (11th Cir.), *reh'g en banc denied*, 391 F.3d 1327 (11th Cir. 2004) (holding that constitutional challenges to sentences must be raised in the parties' initial brief), the Eleventh Circuit rejected this argument because Defendants had raised it for the first time in a petition for rehearing and affirmed Defendants' convictions and sentences. *United States v. Pipkins*, 412 F.3d 1251, 1253 (11th Cir. 2005). Defendants again petitioned for writ of certiorari, and the Supreme Court denied their request on October 31, 2005. *Pipkins v. United States*, 546 U.S. 994 (2005). Petitioner Moore filed this motion for collateral relief on September 6, 2006.

### B. Contentions

Moore contends that his sentence was imposed in violation of his constitutional rights under the Fifth and Sixth Amendments of the United States Constitution and requests that his sentence be vacated, set aside, or corrected pursuant to 28 U.S.C. § 2255. Moore asserts four grounds: (1) ineffective assistance of trial counsel in violation of the Sixth Amendment, (2) ineffective assistance of appellate counsel in violation of the Sixth Amendment, (3) violation of his due process rights under the Fifth Amendment when the

-3-

district court used aspects of his vacated state court conviction to enhance his base offense and criminal history levels under the federal sentencing guidelines, and (4) actual and factual innocence of the charges for which he stands convicted and sentenced.

## II.     Discussion

### A.     Procedural Bar

Petitioner raises all of his contentions for the first time. Generally speaking, a defendant must raise all challenges to his criminal conviction or sentence on direct appeal, if such relief is available, or else his challenges will be considered procedurally barred in a section 2255 proceeding. *See Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir. 1994) (citing *Greene v. United States*, 880 F.2d 1299, 1305 (11th Cir.1989) (and the cases cited therein), *cert. denied*, 494 U.S. 1018, 110 S. Ct. 1322, 108 L. Ed. 2d 498 (1990)). If a defendant fails to pursue an available claim on direct appeal, he must establish cause for the default and actual prejudice resulting from the alleged error or a fundamental miscarriage of justice, generally thought of as actual innocence, in order to have his claim heard under section 2255. *Id.* at 1055-56.

Here, Petitioner claims he is actually innocent, and further that appellate counsel was ineffective; these claims may excuse his procedural default with regards to his ineffective assistance of trial counsel claim. Petitioner's failure to raise his third contention, that aspects of his vacated state court conviction were used to enhance his sentence, may be

excused because Petitioner's conviction, if vacated, does not appear to have been vacated until after his direct appeal, which means that the facts necessary to review such a claim were not available at the time of his direct appeal. Thus, Petitioner has overcome the procedural bar with respect to all of his claims.

## B. Ineffective Assistance of Counsel

The Sixth Amendment guarantees a criminal defendant the right to "the assistance of counsel for his defense." U.S. Const. amend. VI. The Supreme Court has recognized that "the [constitutional] right to counsel is the right to effective assistance of counsel." *Strickland v. Wash.*, 466 U.S. 668, 686 (1984). To prove ineffective assistance of counsel, a petitioner must show both that the performance of his attorney was deficient and that such deficiency prejudiced his defense. *Id.* at 687. "Judicial scrutiny of counsel's performance must be highly deferential" and avoid second-guessing counsel's performance. *Id.* "It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Waters v. Thomas*, 46 F.3d 1506, 1522 (11th Cir. 1995). As such, the cases in which petitioners for post-conviction relief can properly prevail on ineffectiveness grounds are "few and far between." *Id.* at 1511.

For an attorney's performance to be deficient under *Strickland's* first prong, it must fall "below an objective standard of reasonableness" and "in light of all the circumstances" be "outside the wide range of professional competence." *Strickland,* 466 U.S. at 688;

-5-

*Putman v. Head*, 268 F.3d 1223, 1242 (11th Cir. 2001). For an attorney's performance to be prejudicial, the petitioner must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Hill v. Moore*, 175 F.3d 915, 922 (11th Cir. 1999) (quoting *Strickland*, 466 U.S. at 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A court may dispose of a claim if it fails to meet either standard. *Oats v. Singletary*, 141 F.3d 1018, 1025 (11th Cir. 1998).

### 1. Ineffective Assistance of Trial Counsel

Petitioner contends that his trial counsel was ineffective in the following fourteen ways.

### a. Failure to use a peremptory challenge

Moore asserts that counsel was ineffective because she did not use a peremptory strike to remove Juror Hawlk after Juror Hawlk expressed uncertainty about his ability to be fair and indicated that he might be more likely to believe a child witness. Moore contends that this deprived him of his right to a fair and impartial jury.

When asked if he could follow the court's instructions and be fair; Hawlk replied, "I *think* I can do that." Tr. Trans. Vol. 1, at 47 (emphasis added). When asked, "Is there anything about the allegations that you've heard so far that would lead you to believe that you probably shouldn't serve on this jury," Hawlk replied:

-6-

> Well, I do have my doubts, yes ma'am. Like I say, I spend a lot of time with boys and their parents, and I'm trying to get them to understand about drug abuse and parental pressures and adult pressures on children, and I've gone through some courses, I've led courses. *I think I would have a hard time with it.*

*Id.* at 47-48 (emphasis added). Later in voir dire when asked, "Is there anyone here who would tend to give any greater weight, however slight, to the testimony of someone because of their age," Hawlk replied, "I would have problems with–well, not problems, but I would *take the weight of a child's testimony a little more seriously . . . .*" *Id.* at 128 (emphasis added).

"The constitutional standard for juror impartiality is whether the juror can lay aside his opinion and render a verdict based on the evidence presented in court. Evaluation of bias involves assessing a juror's credibility and therefore his or her demeanor." *United States v. Simmons*, 961 F.2d 183, 184 (11th Cir. 1992) (internal quotations and citations omitted). Here, this court proceeded to question Mr. Hawlk following defense counsel's voir dire. The court asked: "We're not talking about whether childhood prostitution is neat or kidnapping is neat or whatever. We're trying to find out whether you can make the Government convince you that that man did what he's charged with. . . . Can you do that? . . . Do you have any problems with that?" Tr. Trans. Vol. 1, at 49-50. Hawlk responded, "Yes, sir, I can" and "No, sir, I don't." *Id.* Petitioner's counsel objected to Hawlk for cause because, "[h]e said some things that in effect he feels it's possible he couldn't get his

AO 72A
(Rev.8/82)

feelings about this case out of his mind and start from a clean slate." *Id.* at 51. This court denied counsel's motion.

Counsel may use a peremptory strike against a juror for any reason or no reason at all as long as she does not use her strikes in a racially discriminatory manner. The decision on when and when not to use a peremptory strike is certainly a strategic one. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Atwater v. Crosby*, 451 F.3d 799, 808 (11th Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91). Here, counsel chose to challenge Hawlk for cause, but not to expend one of her peremptory strikes on him. Given the court's thorough questioning of the witness, there was ample cause for her to believe that it would be strategically best to save her peremptory strike for another juror. Counsel's actions do not amount to ineffective assistance, and the court DENIES Petitioner's motion on this claim.

### b.     Failure to investigate, interview, and subpoena

Moore submits that counsel was ineffective because she refused to locate, interview, and call to testify twelve witnesses at his request. Moore's witnesses fall into two categories. Moore claims that witnesses one through four, all testified at his state court trial about his interactions with Juvenile Female ("J.F.") 11 and that they could have offered similar material testimony in federal court. Moore claims that witnesses five through twelve could have provided valuable alibi and rebuttal testimony. P's Motion at 5-3.

-8-

With regard to Petitioner's requested witnesses, five through twelve, Petitioner has not shown by his allegations that counsel's failure to call these witnesses was prejudicial under *Strickland*. Petitioner has merely stated that these witnesses would provide "rebuttal" or "alibi" testimony. He has not specifically stated what propositions this testimony would rebut or which specific charges it would alibi. Without more information, it is impossible for this court to determine what difference these witnesses would have made at trial, and whether or not counsel's decision not to call them was merely strategic or prejudicial. A petitioner's motion for relief under section 2255 cannot be granted "when his claims are merely conclusory allegations unsupported by specifics or contentions that in the face of the record are wholly incredible." *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (internal citations omitted). Without more, this court cannot hold that the probability that these witnesses would have changed the result in this trial is sufficient enough to cast doubt upon its outcome.

With regard to Petitioner's requested witnesses, one through four, the likelihood of prejudice is less clear. Petitioner contends that these witnesses could have addressed his interactions with J.F. 11. According to J.F. 11, she became involved in prostitution in June 2000 at the age of 12. J.F. 11 was sneaking out at night to be with Antuan Davis, a/k/a Weasel, with whom she had a sexual relationship. One night, Weasel called J.F. 11 and told her that he had a friend out in a car waiting for her and that if she did not come out he would

kill her. J.F. 11 went outside and got into a car with Moore who drove her to his house. While in the house, Weasel beat J.F. 11, and he and Moore tied her to a bed with telephone cords. While holding her captive in the house, Moore spoke with J.F. 11 about prostitution. He then took her to Greenbriar Mall and purchased her "hoe" clothes. J.F. 11 went along with Moore because he threatened to kill her, and she saw that he had a weapon. Later that evening, Moore threatened to kill J.F. 11 and forced her to have sex for money in another man's car. That man tried to take her home, but Moore pulled a gun on him. Relatives located J.F. 11 two weeks later and took her home. Moore began stalking J.F. 11. One night he called J.F. 11 and told her to come out of her house or he would kill her and her family. J.F. 11 got in the car with Moore who took her to a "bisexual woman's house." While staying there, she was taken to another girl's house and was raped by three men. J.F. 11 was ultimately able to approach a police officer. Presentence Report, ¶¶ 138-39.

J.F. 11 is relevant because her testimony that Moore raped her, forced her to engage in prostitution, and pointed a pistol at her was the primary basis for Moore's conviction and sentence for enticing juveniles (Count 14), extortion (Count 110), involuntary servitude (Count 177), using facilities (Count 85), and various enhancements, including enhancements for the use of violence, threats, and a weapon. Presentence Report at 109-19. Petitioner's issue seems to be that witnesses one through four testified at state court to challenge J.F.

AO 72A
(Rev.8/82)

11's credibility, but that his counsel failed to call them in federal court which resulted in prejudice.

This court is unable to determine the potential impact of federal trial counsel's decision without a clearer understanding of the factual occurrences and legal proceedings to which Petitioner refers. According to his Presentence Report, Moore was arrested on July 7, 2000, for pimping, false imprisonment, and terroristic threats, and indicted. This indictment was dismissed on April 3, 2001, and Moore was re-indicted for (1) engaging in sexual intercourse with J.F. 11, a child under the age of sixteen, (2) unlawfully committing assault on a child, J.F. 11, by pointing a pistol at her and threatening to kill her, and (3) directing a child, J.F. 11, to enter an automobile and engage in sexual intercourse behind a building located at 1724 Metropolitan Parkway, Atlanta. Moore was sentenced to twenty years in Fulton County Superior Court on February 12, 2001 under the case number 01SC00843. However, this court was unable to obtain the exact details of this trial, the charges, who testified, and to what. The only information the court has is that the case number listed in the presentence report, 01SC00843, may have been dead docketed and *nolle prossed*. This information is inconsistent with the availability of trial testimony that the record seems to indicate. *See, e.g.,* Tr. Trans. Vol. 4, at 644. Without knowing what testimony witnesses one through four provided in state court, this court cannot determine if counsel's failure to call them in federal court was unreasonable or resulted in prejudice.

Moore failed to explain to the court what these witnesses said at the state court trial that would have been useful here. As such, he fails to allege a basis for finding prejudice. Therefore, the court DENIES his request for relief on this ground.

### c. Allowing a breakdown of attorney/client relations

Moore contends that he and his counsel had a conflict that was "bitter and personal," that she no longer wanted to be involved with the case, and that this prevented her from actively pursing his defense. Moore points to no specific incident or action that took place as a result of this "bitter and personal" conflict, and when speaking to the court, Moore indicated that he "respect[ed] [his counsel] to the fullest." Tr. Trans. Vol. 14, at 2112. An indigent criminal defendant has an absolute right to be represented by counsel, but he does not have a right to have a particular lawyer represent him or to have a "meaningful relationship" with that counsel. *See Morris v. Slappy*, 461 U.S. 1, 13 (1983) ("No court could possibly guarantee that a defendant will develop the kind of rapport with his attorney – privately retained or provided by the public" necessary to achieve a "meaningful attorney-client relationship."). A defendant's allegation of general loss of confidence or trust in his counsel is not sufficient to warrant the court appointing new counsel, and thus such empty claims are also not sufficient to support a claim of ineffective assistance. *See Thomas v. Wainwright*, 767 F.2d 738, 742 (11th Cir. 1985) (discussing the constitutional relevance of

-12-

hostility between counsel and defendant). The court DENIES Petitioner's claim on this point.

### d. Denying Moore the opportunity for a seven-year plea deal

Moore alleges that he accepted the Government's seven-year plea deal but requested that counsel push for five years if she could get it. The court has no record of this alleged conversation between Moore and his counsel. The record does reflect that counsel's contention was that she informed the court that Moore wanted five years, the Government would not accept a five-year counteroffer, and the Government pulled the seven-year offer from the table and replaced it with a ten-year deal, which Moore refused to accept. Tr. Trans. Vol. 2, at 180-81. The following conversation took place in chambers prior to trial:

Mr. Moore: But you got to realize I agreed to take the seven when you offered to me, you know what I'm saying? I agreed to that. It seemed like I was forced into trial. I agreed to that.

[AUSA]: No, you didn't that day. You were offered it for a day.

Mr. Moore: And I agreed to it that day. That's on everything.

[Counsel]: Mr. Moore, you recall that you told me you would not take seven. You would take five, but not seven.

Tr. Trans. Vol. 2, at 180-81.

An accused must be involved in the decision to accept or reject a plea offer, and counsel may be ineffective for failing to inform and advise an accused of a plea offer. *Diaz v. United States*, 930 F.2d 832, 834 (11th Cir. 1991). *See also Strickland*, 466 U.S. at 688

-13-

("Counsel has an obligation to consult with his client on important decisions and to keep him informed of important developments in the course of the prosecution."). Petitioners frequently allege that their counsel did not adequately inform and advise them about an available plea and if their counsel had done so, they would have taken the plea, avoided trial, and been sentenced more favorably. Moore offers a slight twist on this common claim by alleging that counsel failed to adequately convey his wishes to the Government rather than failed to convey the Government's offer to him. However, the same legal analysis applies when assessing a defendant's decision not to accept a plea offer and a defendant's decision to accept a guilty plea offer. *Coulter v. Herring*, 60 F.3d 1499, 1504 n.7 (11th Cir.1995). A defendant must offer more than his own testimony to show that but for the lawyer's errors, he would have accepted the plea offer and abstained from going to trial. *Id.* at 1504-05. "Given appellant's awareness of the plea offer, his after the fact testimony concerning his desire to plead, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer." *Diaz*, 930 F.2d at 835.

Here, the transcript of conversation preceding trial supports Petitioner's claim that there was a dispute between him, his counsel, and the Government about whether he intended to accept the seven year-plea deal. The court cannot conclusively say that Petitioner has not shown that "but for the lawyer's errors, he would have accepted the plea offer and abstained from going to trial," and that Petitioner "is entitled to no relief." 28 U.S.C. §

-14-

2255; *Coulter*, 60 F.3d at 1504. The court DIRECTS the Clerk of Court to submit this issue to a Magistrate Judge for purposes of holding an evidentiary hearing.

### e.     Failure to apprise Moore of his possible sentence

Moore alleges that counsel told him on numerous occasions that the maximum sentence that he would be subject to was twenty years. Moore actually faced up to forty years on Count 253 alone, and he contends that had he known the actual sentence he faced, he would have accepted the Government's ten-year plea deal  Misadvising a defendant on his maximum sentence exposure under the sentencing guidelines might be, but is not necessarily, a ground for ineffective assistance. *See Brooks v. United States*, No. 07-10331, 2007 WL 2573994, *3 (11th Cir. 2007) (holding that petitioner did not show that mis-advice from counsel on sentence affected his decision to plead). The same legal standard governing Moore's claim in (d) above governs here. He must show that "but for the lawyer's errors, he would have accepted the plea offer and abstained from going to trial." Without more information, the court cannot establish conclusively that he has not done so.   The court DIRECTS the Clerk of Court to submit this issue to a Magistrate Judge for an evidentiary hearing in which the court can assess the credibility of Petitioner's contention that his counsel did not inform him of his possible sentence and Petitioner's counsel can testify as to what she told Petitioner about his possible maximum sentence.

-15-

**f.      Improper handling of Moore's denial of pro se status**

Moore asserts that counsel was ineffective by hindering his desire to represent himself.  The court conducted a full *Faretta* hearing, informed Moore of the pluses and minuses of having a lawyer, and gave Moore an opportunity to ask questions.  Pre-Tr. Trans. 01/10/2002 at 30-40.   The court recessed for ten minutes so that Moore could fully contemplate his decision.  *Id.* at 32.  During this recess the court spoke with the lawyers in chambers, and it was during this discussion that the court indicated it would give Moore additional time if he were to proceed pro se.  *Id.* at 34.  During this meeting, Moore's counsel stated, "I just went back to see if he would speak with me.  Initially I asked do you want to ask me questions, do you want to talk to me?  No, he said.  But I went back anyway."  *Id.* at 33.  When the parties reentered the courtroom, the court again asked Moore if he had any questions.  *Id.* at 36.  Moore had none and did not raise the issue of a continuance before he told the court that he would accept counsel.  *Id.* at 27.  Moore asserts that counsel told him that if he continued to exercise pro se rights, the court would force him to trial as scheduled even though counsel knew that the trial court would grant Moore a continuance if he was granted pro se status, and that had counsel told him the truth he would have proceeded pro se.  P's Mot. at 5-7.

*Faretta v. California*, 422 U.S. 806 (1975), requires that a trial court ensure that all defendants who desire to proceed without counsel understand the charges, basic trial

AO 72A
(Rev.8/82)

procedures, and the pitfalls of self-representation.  Every defendant who chooses to waive his or her Sixth Amendment right to counsel must do so knowingly, voluntarily and intelligently.  *United States v. Fant*, 890 F.2d 408, 409 (11th Cir. 1989), *cert. denied*, 494 U.S. 1038 (1990).  If the conversation that Moore alleges took place at all, it must have occurred during counsel's recess visit to Moore or in the few minutes between counsel leaving the judge's chambers and Moore beginning his conversation with the court.  If the conversation took place before counsel spoke with the judge, then counsel had no idea that the judge would offer additional time and was not unreasonable in offering her advice to Moore.  If the conversation took place in the minutes before Moore began speaking with the judge, and it was indeed crucial to Moore's decision not to represent himself, Moore could easily have asked the judge about an extension when asked if he had any questions.  The court did all that *Faretta* requires to preserve Moore's constitutional right to self-representation.  Likewise, Moore's right to effective assistance was not denied because counsel's comments were reasonable if they occurred before she knew about the possibility of an extension and were not prejudicial if they occurred after the conference. The court DENIES Petitioner's motion with respect to this claim.

### g.    Failure to properly cross-examine

Moore alleges generally that counsel was ineffective during cross-examination and specifically, that counsel failed to use available Georgia state criminal trial transcripts to

-17-

impeach witnesses, including J.F.11, who Moore alleges offered state court testimony inconsistent with their federal court testimony. Moore, as defendant, was presumably present at any state trial that took place, yet he has not offered the court any information about why counsel's performance, generally, during cross-examination was not effective, what testimony was inconsistent or whether that testimony was material. As the court indicated above, general claims cannot be evaluated as to performance or prejudice.

Moore's claims with regard to J.F.11 are different, however. Here, Moore alleges a specific ground on which her testimony was inconsistent. Moore contends that J.F. 11's testimony in federal court that he had a gun during his alleged kidnapping and rape of her is inconsistent with J.F. 11's testimony in state court; in state court she did not mention a weapon. In federal court she said that he had a gun during the alleged rape; in state court she did not. P's Mot. at 5-8. Moore contends that his counsel failed to challenge this inconsistency when cross-examining J.F. 11 in federal court. The presentence report indicates that J.F. 11's testimony that Petitioner threatened her with a gun during the alleged rape and kidnapping made a difference in the outcome at trial; it was the basis for weapons enhancements with regard to the extortion, involuntary servitude, and using facilities claims. Presentence Report, ¶¶ 633, 642, 650. The court DIRECTS the Clerk of Court to assign this issue to a Magistrate Judge for an evidentiary hearing. During that hearing, Petitioner's counsel may testify as to why she chose not to address J.F. 11's state court testimony on the

-18-

stand.  The court DIRECTS the Government to produce at trial the transcript of J.F. 11's

testimony in state court so that this court may assess whether it was or was not inconsistent

with her testimony in federal court.

<h3 style="text-align:center;">h.      Failure to move the court for a bill of particulars</h3>

Moore alleges that the lack of a bill of particulars prejudiced his case because he and

counsel could not develop an "adequate defense strategy" given the complexity of the

allegations, the number of individuals involved, and lack of temporal context.  P's Mot. at

5-10.  The purpose of a bill of particulars is "to inform the defendant of the charge against

him with sufficient precision to allow him to prepare his defense, to minimize surprise at

trial, and to enable him to plead double jeopardy in the event of a later prosecution for the

same offense."  *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986).  An

attorney is not required to move for a bill of particulars, nor is a judge required to grant an

attorney's request if she does so.  *See Will v. United States*, 389 U.S. 90, 98-99 (1967)

(noting that a trial court has broad discretion in ruling on a motion for a bill of particulars);

*United States v. Colson*, 662 F.2d 1389, 1391 (11th Cir. 1981) (noting that a judge has not

abused his discretion not to grant a bill of particulars until there was actual surprise at trial

and prejudice to the defendant's substantial rights resulting from the denial).  Counsel may

choose not to seek a bill of particulars if she feels that all the necessary information has been

AO 72A
(Rev.8/82)

provided by other sources such as the indictment and discovery. *United States v. Martell*, 906 F.2d 555, 558 (11th Cir. 1990).

Moore does not point to any portion of his case, involving a particular charge or a particular witness, that would have been aided by a bill of particulars. Further, Moore has not shown that his counsel's failure to seek a bill was "outside the wide range of professional competence." *Strickland,* 466 U.S. at 688. As such, this court finds that Petitioner has not adequately shown that counsel was ineffective and DENIES his motion with respect to this claim.

### i. Depriving Moore of his constitutional right to testify

Petitioner contends that his counsel told him that he "could take the stand to testify when it was appropriate" but then decided unilaterally that he should not testify and did not call him. P's Mot. at 5-10. Moore contends that when the court discussed his right to testify, counsel never gave him an opportunity to state his intention to testify; the court assumed that he had waived his right to testify; and he said, "I ain't said nothing." Tr. Trans. Vol. 11, at 1806. The court finds that Moore's contention is not supported by the record. Immediately prior to the court's comments on his right to testify, Moore himself stated, "I got the right to have witnesses, sir. I might not want to get on the stand myself, you understand, I ain't going to put myself in no fire and get on the stand myself." *Id.* at 1804. This was an unequivocal statement that he did not wish to testify. It was reasonable

AO 72A
(Rev.8/82)

for the court and Moore's counsel to understand it that way.  The court DENIES Petitioner's request for relief on this ground.

> **j.**  **Failure to use recantation of testimony when cross-examining witness J.F. 22**

On February 4, 2002, while the attorneys were in court for the charge conference, the Government revealed that J.F. 22 came to the Government and said that she wanted to recant her testimony.  She wanted her testimony to reflect that she worked for Moore, but she exaggerated the time she worked for him; he beat her, but not with a bat; some of the things she did for Moore she actually did for Bell or "Worm," another pimp; and Moore did not give her drugs.  Tr. Trans. Vol. 10, at 1761.  Lead counsel for the Government would not speak with her and called J.F. 22's assigned counsel.  *Id.*  After speaking with J.F. 22, her counsel reported to the Government that J.F. 22 had come in to change her story because she was afraid and did not feel that anyone could protect her and that she now wished to recant her recantation.  *Id.*  Following this revelation, the court told Moore's counsel that she could call J.F. 22 to court if she wished but said after the parties had discussed the matter more fully, "I would think carefully about whether or not it helps your case or not." *Id.* at 1762, 1765.  Moore's counsel chose not to call J.F. 22 back to court.  Petitioner alleges that she was ineffective for failing to do so.  Moore believes that the Government may have influenced the witness to recant her recantation and that his counsel could have discredited J.F. 22's testimony.

-21-

Moore contends J.F. 22's testimony was prejudicial because the testimony provided the basis for an eight-point sentencing increase in Count 117, extortion; a two-point increase on Count 184, involuntary servitude; a four-point increase in Count 85, using facilities; and provided additional evidence of Count 253, providing drugs to a minor. The record reveals that counsel had valid concerns that recalling J.F. 22 might have introduced evidence that would lead a jury to believe that her client had something to do with threatening J.F. 22. Counsel made a strategic decision to forego the possible benefit of discrediting harmful testimony in order to avoid the risk of prejudicing the jury against her client. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support limitations on investigation." *Berry v. Ferrell*, 201 Fed. Appx. 746, 748 (11th Cir. 2006). It is not the court's role in assessing ineffective assistance claims to second-guess such strategic decisions. The court DENIES Petitioner's motion with respect to this claim.

### k.    Failure to investigate and use possible rebuttal testimony

Moore proposes that his counsel was ineffective because she did not investigate his claims that Government witnesses Bryant Weaver Bell (a/k/a "Worm), Deravis Thomas, Walter Johnson, Terrance Anderson (a/k/a "Scooby"), and Mekell Austin had revealed to other prisoners in federal prison that they planned to fabricate testimony in order to receive favorable treatment from the Government. Moore has not shown that this decision was

either deficient or prejudicial. Moore admits that his counsel told him she would not call these witnesses as impeachment witnesses because "there were enough convicted criminal[s] testifying in the case" and it was a "'strategical decision' not to interview and call these witnesses." P's Mot. at 5-12.

While not all strategic decisions are protected, the court finds that it was certainly reasonable for counsel to decide that a jury would not be persuaded by allegations and boasting made among prisoners in custody and to determine that it was sufficient to question these witnesses on cross-examination about whether they had received any benefit from the Government in exchange for their testimony. Counsel's discussions on the record with the court further indicate that she considered the value of calling these witnesses and strategically excluded them. Tr. Trans. Vol. 11, at 1803-06.[1] Further, Moore has pointed this court to no specific testimony made by these witnesses that he believes was false. As such, this court has no way of knowing if discrediting this testimony would have made a

---

[1]The court gave Moore an opportunity to speak, and he said that he had witnesses he wanted to put forth that his counsel would not allow. The court allowed Pipkins' counsel to speak about the witnesses, who Pipkins had also requested, and he said, "In my professional judgment we just don't need any more people with criminal records in this case. I just don't think it's in his best interest. So far as a strategic decision on my part . . . ." Later, Moore's counsel says, "[B]ased on what he has indicated they would be able to testify to, the strategic opinion is that it would open the door to criminal history and character evidence that would paint an even more bleak picture, and so we're trying to avoid that." The court and counsel talked about 404(b) evidence from the state court trial and about Moore being a drug dealer and the court said, "That, of course, would be devastating if it got before the jury."

-23-

difference in the outcome of the trial.  Moore has not shown that this decision was either deficient or prejudicial, and the court DENIES this aspect of the motion.

> **l.    Failure to request that the trial court give a multiple conspiracy charge to the jury**

Moore contends that counsel was ineffective for not requesting that the trial court charge the jury with a "multiple conspiracy charge."  However, Petitioner fails to note that counsel for his co-defendant, Pipkins, discussed the possibility of multiple conspiracies at the charging conference in the presence of Moore's counsel, and the court denied the motion for a charge based on multiple conspiracies.  Tr. Trans. Vol 10, at 1701-03.  It would have been pointless for Moore's counsel to also request such a charge, and she was not ineffective for failing to do so.  The court DENIES this claim.

> **m.    Failure to object and move for a mistrial**

Moore maintains that his counsel was ineffective because she failed to object and move for mistrial when the Government made a plea to the jury during closing statements to find Moore and Pipkins guilty "on behalf of all the children of the night . . . ."  Tr. Trans. Vol. 11, at 1876.  Petitioner, himself, acknowledges that this claim "is not substantial enough to warrant a new trial [sic] in this case," but asks the court to consider it cumulatively with his other alleged errors.  P's Motion at 5.  The court finds this argument without merit.  The court DENIES this claim.

### n. Failure to object when court sentenced some counts to run consecutively

Petitioner contends that counsel was ineffective for failing to object to the court using U.S.S.G. § 5G1.2 to determine that some of his sentences should run concurrently.

> The Sentencing Reform Act of 1984 provides, "If multiple terms of imprisonment are imposed on a defendant at the same time . . . the terms may run concurrently or consecutively . . . . Multiple terms of imprisonment imposed at the same time run concurrently unless the court orders or the statute mandates that the terms are to run consecutively. Multiple terms of imprisonment imposed at different times run consecutively unless the court orders that the terms are to run concurrently." Sentencing Reform Act of 1984, § 212(a)(2), 18 U.S.C. § 3584. U.S.S.G. § 5G1.2(d), however, provides that, when there are multiple counts of conviction,
>> if the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law.

*United States v. Davis*, 329 F.3d 1250, 1253 (11th Cir. 2003). Before the court ruled, Petitioner's counsel conferred with Moore about the impact of such a request, namely the chance that he might spend more time in state custody, and requested that the court run the sentences concurrently. Tr. Trans. Vol. 14, at 2090. Therefore, Petitioner cannot show that his counsel's performance was deficient. The mere fact that the court disagrees with counsel does not state a claim for ineffective assistance. Moore faced a statutory maximum of 280 years and a guidelines recommendation of life. Count 253, alone, authorized the court to sentence Moore to forty years. The court chose to run some counts consecutively and others

-25-

concurrently to achieve a sentence of forty years. This is far less than the court could have imposed and is well within the guidelines. There is no prejudice. Petitioner also argues that counsel failed to object to the court's failure to notify him of its decision to depart from the guidelines. The court finds this argument without merit. The court DENIES this claim.

       **o.**       **Failure to properly object to Presentence Report Sentence Enhancements under the Sentencing Guidelines**

Specifically, Moore argues that the enhancements for both weapons and expressed threats resulted in double counting. "Impermissible double counting occurs only when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." *United States v. Rodriguez-Matos*, 188 F.3d 1300, 1309 (11th Cir. 1999) (quotation marks and citation omitted). Moore stated, "[i]n each case of these offenses [enticing a juvenile into prostitution, interstate travel under 18 U.S.C. § 2242, and involuntary servitude with respect to J.F. 11] the PSR enhanced Moore for offense conduct that was taken into account in other sections or by the RICO and/or Hobbs Act conviction themselfs [sic]." P's Mot. at 5-16. Moore misunderstands the state of the law. Double counting can only occur when the court enhances the sentence for an offense on the basis of something that has already been accounted for as an element *of that offense*. For example, if the offense requires that the felon use a weapon, the court cannot enhance for

use of a weapon.  Upon a review of the presentence report, the court finds that Moore's

contentions are without merit.  The court DENIES this claim.

> **p.**     **Failure to make an *Apprendi/Booker* objection to all conduct used to enhance Moore's sentence that was not determined by the jury**

Moore contends, on the basis *Apprendi v. New Jersey*, 530 U.S. 466 (2000), that

counsel was ineffective because she objected to some but not all of the facts, not determined

by the jury, that were used to increase Moore's sentence.  Specifically, Moore takes issue

with the fact that his counsel did not object to enhancement of his sentence based on his

putative role in the offenses.  The record reflects, however, that Moore's factual assertions

are inaccurate.  In fact, Moore's counsel did object to the contention that Moore was a leader

in the offenses.  The court, however, rejected her argument.  *See* Presentence Report at 171.

Further, appellate counsel raised this issue on appeal, and the Eleventh Circuit rejected it.

*Pipkins*, 378 F.3d at 1299 n.14 ("Moore was clearly 'an organizer or leader'. . . he exercised

decision-making authority, participated in the commission of the offenses, recruited

accomplices, and took the lion's share of the fruits of the crimes.  . . .  Thus, the court did

not clearly err in concluding that Moore was an organizer or leader.").  Petitioner can show

no prejudice, and the court DENIES  this claim.

-27-

### 2.    Ineffective Assistance of Appellate Counsel

Moore alleges that appellate counsel was ineffective for (1) failing to follow up on trial counsel's *Apprendi*-type objections, (2) failing to argue that the district court's refusal to allow his trial counsel to cross-examine the case agent with regard to her investigative bias was improper, and (3) failing to raise all of the improper sentence enhancements that were properly preserved below.

With respect to considering an appellate counsel's decision not to raise a particular claim on appeal, the court must apply a "heavy measure of deference" to counsel's judgments.  *Eagle v. Linaham*, 279 F.3d 926, 940 (11th Cir. 2001).  Appellate counsel are not required to raise every non-frivolous issue that the client requests.  *Id.*  To determine whether the failure to raise a claim on appeal is prejudicial, the court reviews the merits of the omitted claim.  *Id.* at 943.  If the omitted claim would have had a "reasonable probability of success," counsel's performance is necessarily prejudicial.  *Id.*  However, "a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at that time."  *Strickland*, 466 U.S. at 689.

AO 72A
(Rev.8/82)

### a.  *Apprendi* **Follow-up**

Moore argues that appellate counsel should have honed in on trial counsel's overruled *Apprendi* objection at sentencing and should have argued it on appeal.  Trial counsel argued at sentencing that a four-point enhancement under U.S.S.G. § 2G1.b(1) on Count 1 and Count 85 was impermissible because the jury did not expressly find that Moore had threatened or coerced J.F. 37.  Had counsel's objection been granted, the adjusted offense level for these counts would have been 29 instead of 31; however, counsel's objection would have made no difference in the overall sentence.  Petitioner's combined adjusted offense level of 43, from which the court based his sentence, was computed using the highest adjusted offense level for each group of counts.  A group included all the counts related to a given J.F.  The relevant counts were grouped with Count 1 and Count 118 with an adjusted offense level of 29, and Count 1 and Count 185 with an adjusted offense level of 33.  Thus, the adjusted offense level of 33 would have been chosen to represent the group for purposes of calculating the overall offense level regardless of whether counsel's objection was overruled or sustained.  Petitioner can show no prejudice, and the court DENIES this claim.

### b.  **Cross-Examining the Case Agent**

Moore contends that his trial counsel "attempted to develop issues related to Agent Brown's investigative bias, however, the District Court disallowed counsel's line of questioning," and that appellate counsel should have raised this on appeal.  P's Motion at

AO 72A
(Rev.8/82)

6-2, referencing Tr. Trans. Vol. 9, at 1667, 1670. Moore's contentions are based on his belief that Agent Brown went beyond her professional boundaries, became personally involved with the witnesses, and "consciously or otherwise encouraged the case to be infected with false allegations and outlandish stories created by the young woman involved." P's Motion at 6-3. First, Petitioner misunderstands the line of questioning. Trial counsel asked Agent Brown various questions about what she did or did not do in the investigation. She claimed she was doing so to "assist the jury in assessing the thoroughness and the accuracy of the investigation." Tr. Trans. Vol. 9, at 1667. The court cut off her line of questioning because

> the thoroughness and the accuracy of the investigation [were] not an issue in this case. Whether or not the government has proved the charges through competent evidence beyond a reasonable doubt [was] an issue. We are not marking her paper, we're trying to determine whether this indictment has been proven beyond a reasonable doubt.

*Id.* at 1667-68. Trial counsel later said, "we submit that the jury has a right to understand any bias that may have come into this investigation," and the court said it would allow questions directed toward bias but that questions about whether "the constable may have on some occasion blundered if that does not affect the evidence in this case [were] of no concern to this jury." *Id.* 1670-71. The questions the court stopped counsel from asking were not directed toward bias and were not relevant. Petitioner can show no prejudice, and the court DENIES this claim.

-30-

### c.    Sentence Enhancements

Moore contends that "appellate counsel failed to brief and present on appeal some of the most significant objections [to the PSR which had been raised at sentencing] with considerable [sic] more viability than those raised by appellate counsel." P's Motion at 6-3. Moore's appellate counsel did raise numerous sentencing issues on appeal. Moore does not provide the court with any particular objection that his counsel did not raise or any reason why Moore believes raising these objections would have made any difference in the outcome on appeal. The court finds his allegations conclusory and without merit and DENIES this claim.

### C.    Other Claims

In addition to ineffective assistance of counsel, Petitioner argues:

(1)    In light of Moore's Georgia state convictions being vacated on appeal for insufficiency of evidence any enhancements applied to Moore in federal court, based on that Georgia conviction, should be removed and Moore resentenced without application or reliance on those State convictions.

(2)    Moore is actually and factually innocent of the charges for which he stands convicted and sentenced.

P's Motion at 8-9. Moore has numerous Georgia state convictions and he does not indicate to which conviction he is referring. The court can assume that he is referencing the conviction surrounding his activity with J.F. 11 that has been referred to elsewhere in this order. As the court stated above, more factual information is needed before such a claim can

-31-

be evaluated. That scenario was used to enhance petitioner's sentence on the Group 1 offense related to J.F. 11. The court notes, however, that Moore's claim fails with respect to the criminal history aspect of his sentence. The maximum points that could be awarded for career offender status under § 4A1.1(c) were awarded on the basis of convictions before the event involving J.F. 11, and the court did not award any additional career offender points based on any conviction that arose out of this event.

Moore offers only conclusory statements about his actual innocence and the Court finds his claims to be without merit and DENIES them.

With his section 2255 motion, Petitioner also submitted a motion to proceed in forma pauperis. However, there are no filing fees for a section 2255 proceedings. *See Anderson v. Singletary*, 111 F.3d 801, 806 (11th Cir. 1997) ("for a section 2255 proceeding, no filing fee is required"). Thus, the court DENIES as MOOT Petitioner's motion to proceed in forma pauperis [755].

### III.    Conclusion

The court DIRECTS the Clerk of the Court to serve the original section 2255 motion upon the United States Attorney. The United States Attorney is DIRECTED to respond within thirty (30) days from the date of this order and show cause why Petitioner should not be granted relief on the claims in sections II(B)(1)(d), (e), (g), and (i), and to explain the circumstances of Petitioner's state court trial for statutory rape, pointing a pistol at another,

and prostitution.  The Clerk is DIRECTED to submit the motion to the Magistrate Judge following the Government's response.

SO ORDERED, this 20th day of April 2009.

_____s/ J. Owen Forrester_____
J. OWEN FORRESTER
SENIOR UNITED STATES DISTRICT JUDGE

AO 72A
(Rev.8/82)